**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| STACY SPAGNARDI, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. §2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:17-CR-345-CAP-JSA-2 |
| UNITED STATES, | : | |
| Respondent. | : | CIVIL ACTION NO. |
| | : | 1:20-CV-4169-CAP-JSA |

## <u>MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION</u>

Though counsel, Movant Stacy Spagnardi has filed the instant motion to vacate pursuant to 28 U.S.C. §2255, in which she seeks to challenge the constitutionality of her convictions and sentences following her guilty plea in the Northern District of Georgia. (Doc. 139). The Court held a virtual evidentiary hearing on July 26, 2021, during which the following people testified: (1) Movant; (2) Ms. Sisson, Movant's mother; (3) Movant's therapist, Dr. Blankenship; (4) Movant's expert witness, Dr. Aynsley Corbett; (5) Kristen Novay, one of Movant's defense attorneys; and (6) Don Samuel, Movant's other defense attorney. (*See generally*, Doc. 157 ("Hr'g Tr.")). For the following reasons, the undersigned **RECOMMENDS** that the motion to vacate be **DENIED**.

I.    Background

    A.    Facts Outlined In The Presentence Investigation Report ("PSR")

    Movant and her husband Allan Spagnardi (hereinafter, collectively "Defendants") operated a chiropractor clinic located in the Atlanta area, which operated under various names. (PSR ¶20). Movant's husband typically saw patients at the clinic while Movant spent most of her time managing the office; however, both of them handled the billing to Aetna, a private insurer. (*Id.* ¶¶21, 22). During 2014 and 2015, the clinic's client base consisted largely in part of Saudi Arabian students studying at colleges in the metro-Atlanta area, all of whom had learned of the clinic by word of mouth from other students and/or family members, and all held Aetna insurance policies through the Cultural Mission of the Royal Embassy of Saudi Arabia. (*Id.* ¶22). The Aetna insurance plan offered 100 percent coverage for chiropractic services, that is, no co-pay and no deductible. (*Id.*). In a nutshell, the investigation revealed that Defendants used their patients' information to bill Aetna for services that were not rendered, which netted them a substantial amount of money. (*Id.* ¶23).

    The investigation also revealed that Defendants used that money for their personal benefit and also concealed it from the Internal Revenue Service ("IRS"). (*Id.* ¶45). To that end, Defendants failed to file federal income tax returns or pay any federal taxes for the years 2014 and 2015. (*Id.* ¶¶ 45, 46). While they were on

2

pretrial release from the criminal charges in this case, Defendants filed a false income tax return for the year 2015.  (PSR ¶50).

B.    Procedural History

On October 3, 2017, a grand jury in the Northern District of Georgia returned a multi-count indictment against Defendants, which alleged that they committed a lengthy healthcare fraud scheme at their chiropractor clinic by using their patients' person information to falsely bill Aetna for visits that never took place.  (Doc. 1). On June 13, 2018, the grand jury returned a superseding indictment, adding a charge that Defendants willfully conspired to defraud the IRS by hiding income and failing to file at least two years' worth of federal income tax returns.  (Doc. 49).  The grand jury returned a second superseding indictment on April 9, 2019, which added allegations that Defendants committed aggravated identity theft when misusing their patients' personal identifying information to commit the healthcare fraud scheme. (Doc. 82).

On April 24, 2019, Movant entered a guilty plea pursuant to a negotiated plea agreement to one count of conspiracy to commit healthcare fraud and one count of conspiracy to defraud the IRS, in violation of 18 U.S.C. §371.  (Doc. 96).[1]  On November 7, 2019, U.S. District Judge Orinda D. Evans sentenced Movant to a total of fifty-one (51) months of imprisonment to be followed by three years of supervised

---

[1]    Movant's husband also entered a guilty plea to the same counts.  (Doc. 94).

release, and restitution, and allowed Movant a delayed reporting date of January 6, 2020.  (Doc. 112; Doc. 144 at 42).  Movant did not file a direct appeal.

On January 2, 2020, Movant filed a motion to continue her surrender date for at least thirty (30) days, because (1) she did not receive actual notice of the January 6, 2020, reporting date until January 2, 2020, (2) she retained new counsel to investigate a possible sentencing issue not raised by plea counsel, *i.e.,* that she was the victim of physical and verbal abuse by her husband, and (3) in connection with that investigation Movant would undergo a psychological evaluation during the continuance to determine if she would raise a claim of ineffective assistance of counsel.  (Doc. 120).  The Court granted Movant's motion in part and required her to report on January 15, 2020.  (Doc. 121).

Movant filed another motion to continue her surrender date for thirty (30) days on January 8, 2020, this time because she was pregnant, was high risk because of her age, and could not schedule an appointment with an obstetrician until February 5, 2020.  (Doc. 124).  Movant also indicated that because her husband had reported on January 6, 2020, she was left with all the responsibilities of closing the clinic. (*Id.*).  The Court denied her motion.  (Doc. 127).  Four days after that denial Movant filed an emergency motion for a two-day extension of time to voluntarily surrender to clean out the clinic, which the Court granted.  (Docs. 128, 129).

On May 18, 2020, Movant filed a *pro se* motion for immediate release to home confinement based on the circumstances surrounding the coronavirus pandemic. (Doc. 131).  On May 27, 2020, Movant filed a *pro se* motion for compassionate release under the First Step Act, 18 U.S.C. §3582(c)(1)(A)(1).[2]  (Doc. 138).  The Court denied both motions on June 19, 2020.  (Doc. 138).

Counsel filed the instant §2255 motion to vacate on Movant's behalf on October 8, 2020.  (Doc. 139).  Following the July 26, 2021, evidentiary hearing, the parties filed their post-hearing briefs.  (Docs. 159, 160).  The only issue before the Court is Movant's argument that plea counsel was ineffective at sentencing for failing to ask for downward departures based on her husband's physical and verbal abuse, which, according to Movant, could have mitigated her sentence.[3]  (Doc. 139-1).  The undersigned finds that Movant did not receive ineffective assistance of counsel.

---

[2]     Under 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, §602, 132 Stat. 5194 (2018), if the Bureau of Prisons fails to bring a motion for compassionate release on the movant's behalf and the movant has fully exhausted all of his administrative rights to appeal that failure, the movant personally may pursue a motion for compassionate release based on COVID-19 concerns under §3582(c)(1)(A)(i) in the sentencing court.  *See United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020).

[3]     Movant initially also argued that counsel was ineffective for failing to object to her criminal history category, but she apparently has abandoned that claim.  (*See* Docs. 139, 159).

II.   <u>Relevant Law</u>

A.   <u>Standard Of Review</u>

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990). Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding her claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

B.   <u>Ineffective Assistance Of Counsel Standard</u>

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d

6

1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018); *see also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992); *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to

address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process[,]" *id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

III.   <u>Analysis</u>

    A.   <u>Evidence Presented At The Evidentiary Hearing</u>

        1.   <u>Movant's Witnesses</u>

            a.   *Movant*

Movant testified that she was the victim of domestic violence, both verbal and physical, from the time that she and her husband met and throughout their marriage. (Hr'g Tr. at 11-16, 23-28).   She described the details of the abuse on several occasions and provided photographs and an audio recording of two of those instances. (*Id.*).   She admitted that she was, in fact, guilty of the acts that brought about her indictment and conviction, but stated that she was not aware that her husband's abuse could have affected her sentence.   (*Id.* at 11, 17, 21, 33, 35).   On cross-examination, Movant admitted that she signed the plea agreement which included a statement that she was satisfied with her attorneys, and that she affirmed that statement upon questioning by the Court during the plea colloquy.   (*Id.* at 31-32).   Movant also conceded that she never told counsel that her husband physically abused her [*Id.* at 16], and that she had never shown the photographs or the audio recording to either of her attorneys [*Id.* at 33].

            b.   *Movant's Mother*

Movant's mother, Ms. Mary Ann Sisson, testified that she witnessed one incident when Movant's husband threw a cereal bowl at Movant, resulting in

bruising and bleeding.  (Hr'g Tr. at 37).  Prior to that time Ms. Sisson had never witnessed any abuse, but she appeared to infer that Movant's husband was controlling.  (*Id.* at 37-38).  She also testified that neither of Movant's attorneys called her to discuss Movant's husband's violent tendencies.  (*Id.* at 39).

> c.    *Dr. Blankenship*

Movant's therapist, Dr. Blankenship, testified that Movant sought out his services in 2018 due to many concerns, including her marriage and the domestic violence as well as the criminal charges against her.  (Hr'g Tr. at 42).  He saw Movant approximately eleven times during 2018 and 2019.  (*Id.*).  During those sessions Movant would describe her husband's anger, which she believed was his way to try to control her.  (*Id.* at 43).  Movant also indicated that she was afraid of her husband based on the threats, intimidation, rage, and anger that would become out of control.  (*Id.* at 44-46).  During the sessions with both Defendants Dr. Blankenship observed that Movant's husband's behavior was consistent with that which Movant had described.  (*Id.* at 46-47).  Dr. Blankenship never spoke with either of Movant's attorneys.  (*Id.* at 49).

> d.    *Dr. Aynsley Corbett*

Dr. Aynsley Corbett, Movant's expert, testified that she was hired to evaluate Movant to help analyze what happened during Defendants' marriage and what, if anything, led up to the criminal charges against them.  (*Id.* at 54).  During that

evaluation, Dr. Corbett interviewed Movant, administered some psychological tests, spoke to witnesses, and reviewed some photographs and a voice memo. (Hr'g Tr. at 54-56).

Dr. Corbett concluded that Movant was a victim of domestic violence by her husband, with a history of psychological abuse and coercive control. (*Id.* at 56). Specifically, Dr. Corbett found that Movant would feel pressured to do certain things and would comply out of fear of what her husband would do, in addition to her concerns about the financial liability and impact on their business if she did not do what he asked. (*Id.*).

Dr. Corbett's tests also revealed Movant's significant elevation on the low self-esteem scale, which Dr. Corbett described as more indecisive, more passive in relationships, and more easily influenced and/or reliant on others to make decisions for her. (*Id.* at 58). Dr. Corbett found that Dr. Blankenship's diagnosis of Movant – that she had an adjustment disorder and tended to compartmentalize her anxiety and depression, and that she was a victim of psychological and physical abuse – was consistent with her own observations. (*Id.* at 60). Overall, it was Dr. Corbett's opinion that Movant was very overwhelmed, stressed, and flustered. (*Id.* at 59). Dr. Corbett did not talk with either of Movant's plea attorneys. (*Id.* at 64).

2. <u>The Government's Witnesses</u>

a. *Kristen Novay*

Ms. Novay testified that at the time she represented Movant, she had been a criminal defense attorney for eleven years, and had represented approximately fifty clients at sentencing hearings during her career. (Hr'g Tr. at 65). She and Don Samuel started their representation of Movant after the superseding indictment was entered. (*Id.* at 66). Their preparation for Movant's case was more extensive than most, because there were a lot of issues related to the financials that they had to determine. (*Id.*). Preparing for resolution of the case (*i.e.,* by plea or trial) and for sentencing entailed meeting with Movant alone on several occasions as well as meeting several times with Jeffrey Ertel, Movant's husband's attorney. (*Id.* at 66-67).

In the sentencing memorandum counsel raised objections to the loss amount calculation, presented arguments regarding the §3553 factors the Court should take into consideration, and discussed how Movant's gambling addiction influenced her criminal activity. (*Id.*; *see also* Doc. 109; Doc. 144 ("Sent. Tr.") at 31-33). Ms. Novay discussed all of these arguments with Movant. (Hr'g Tr. at 68). And during the sentencing hearing Ms. Novay objected to the abuse of trust enhancement, called a character witness to testify, presented Movant's gambling addiction as the reason for her behavior to counteract the Government's argument that it was based on greed,

and even introduced a recording of Movant playing the piano.  (Hr'g Tr. at 72-74); Sent. Tr. at 3-8, 12-16, 19, 31-33).  Ms. Novay also submitted several character letters to the Court on Defendants' behalf.  (Hr'g Tr. at 74).

Movant never told Ms. Novay to argue that she was physically or emotionally abused by her husband.  (*Id.*).  And according to Ms. Novay, while they had conversations about Movant's tumultuous marriage and Ms. Novay observed that Movant's husband was verbally abusive to Movant, Movant never told Ms. Novay that she was being physically abused.  (*Id.* at 69, 79).   Nor did Ms. Novay ever observe that Movant physically was afraid of her husband.  (*Id.*).  Outside of telling Movant that she did not want to know about the sexual details of Defendants' marriage, Ms. Novay never told Movant that she did not care if Movant's husband was abusive.  (*Id.*).

Importantly, Ms. Novay and Mr. Samuel made a deliberate choice not to raise the volatile nature of Defendants' relationship.  (*Id.* at 74-75).  In arriving at that conclusion they considered a number of factors and whether and how to present them, discussed those issues with other attorneys who had been in front of Judge Evans, and tailored their strategy to what they thought would be most effective.  (*Id.* at 74-75).  Counsel then chose a narrative that the proceedings had taken a toll on Defendants' marriage and argued that the Court should consider that factor at sentencing.  (*Id.*).  Ms. Novay and Mr. Samuel discussed with Movant their decision

not to raise Defendants' volatile relationship, as well as all of the other issues they would and would not argue, at sentencing.  (Hr'g Tr. at 75).

Ms. Novay was aware of U.S.S.G. §5H1.3, which allows downward departures for mental and emotional conditions, and §5K2.12, which provides for a downward departure where the defendant committed the offense based on coercion and duress that did not amount to a complete defense.  (*Id.* at 80-81).  Ms. Novay testified that in hindsight she could have considered an argument for §5H1.3 and it might have swayed Judge Evans; however, it was not clear before sentencing whether that guideline would even apply.  (*Id.* at 82).  And with regard to §5K2.12, counsel did, in fact, consider whether there was a connection between the emotional abuse and Movant's commission of the offense.  (*Id.* at 82-83).  However, Ms. Novay did not feel that a request under §5K2.12 would have been appropriate based on what she reviewed and what Movant shared with her about how the offense was committed.  (*Id.* at 83).  And Ms. Novay felt that had they argued for the downward departure based on coercion and duress they would have lost more ground with the Court than they would have gained, and that any such argument would have been "very much in left field."  (*Id.* at 82, 86-87).  Thus, Ms. Novay was not confident that a request based on either guideline would have succeeded.  (*Id.*).

b. *Don Samuel*

Don Samuel also represented Movant.   Mr. Samuel has been practicing criminal defense law for more than forty years and wrote the Eleventh Circuit Criminal Handbook which covers a multitude of federal criminal issues including, *inter alia*, analysis of the sentencing guidelines and its applications.  (Hr'g Tr. at 89). Mr. Samuel testified that Movant never told him that her husband was physically abusive; nor did Ms. Novay indicate that Movant told her of any such physical abuse. (*Id.* at 90).  On the other hand, he could not recall whether Movant told him that her husband was verbally or emotionally abusive, but he witnessed what he would describe as toxic and/or abusive behavior by both Defendants to each other.  (Hr'g Tr. at 90).

B.    Movant Has Failed To Demonstrate Ineffective Assistance Of Counsel.

1.    Movant Has Not Demonstrated Any Deficiency In Her Attorneys' Representation.

Movant claims that Ms. Novay and Mr. Samuel were ineffective for failing to further investigate, and argue for, a downward departure under either §5H1.3 or §5K2.12 based on Movant's husband's abuse.  According to the Government, any such decisions were strategic and Movant has not overcome the heavy burden of rebutting the presumption that they were reasonable.  The undersigned agrees with the Government.

15

Mr. Samuel and Ms. Novay, both of whom are experienced criminal defense attorneys, considered several other arguments before deciding on the strategy they chose to present, and they made a deliberate choice not to seek a downward departure pursuant to §5H1.3.   That decision was based on their experience as seasoned criminal defense attorneys, in addition to other attorneys' opinions about what might or might not be successful in front of Judge Evans.

Moreover, while counsel may have observed potential verbal and emotional abuse and knew that Defendants' relationship was turbulent, neither of them were aware that Movant had been physically abused, and Movant admitted that she had not told them.  It is difficult to surmise how counsel could raise an argument about which they had no knowledge and/or which they thought would not be in the best interests of their client.   Movant's attorneys simply made strategic and informed decisions about what to present and what not to present at sentencing based on what they thought would result in the best outcome for Movant.  That strategy was nothing less than a reasonable professional decision.  *See, e.g., Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("[T]his Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

Movant essentially asks the Court to second-guess her attorneys' strategic decisions with the benefit of hindsight, which is precisely what the Supreme Court

and the Eleventh Circuit have instructed reviewing courts not to do. *See, e.g.,* *Strickland*, 466 U.S. at 689 (cautioning that courts must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"); *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) (stating that courts should presume effectiveness and avoid second guessing with the benefit of hindsight). In short, Movant simply has not met the "heavy" burden of overcoming the presumption that the strategic decisions formulated by her experienced counsel were objectively reasonable. *See, e.g., Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.] . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."); *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005) ("The presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel.").

The fact that Ms. Novay testified that in hindsight they could have argued for a downward departure under §5H1.3, and that any such argument possibly could have swayed Judge Evans, has no bearing whatsoever on whether counsels' decision not to do so constituted ineffective assistance of counsel. *See, e.g., Hector v. United*

17

*States*, Nos. 1:12-CR-183-TWT-JSA-1, 1:17-CV-948-TWT-JSA, 2019 WL 3209448, at \*6 (N.D. Ga. May 9, 2019) (stating that even if counsel told the defendant she thought she was ineffective, that statement does not overcome the strong presumption that her conduct fell within the wide range of reasonable professional assistance or proved that the defendant was prejudiced thereby), *report and recommendation adopted by* 2019 WL 3203009 (N.D. Ga. July 16, 2019); *Hoffman v. Lazaroff*, No. 5:14-cv-1367, 2015 WL 5729578, at \*5 (N.D. Ohio Sept. 28, 2015) ("Appellate counsel's alleged statements to [the petitioner] concerning her feeling that she argued an issue on appeal incorrectly does not provide sufficient support to proceed on his claim of the ineffective assistance of appellate counsel."); *Lee v. Hershberger,* No. RDB-09-2203, 2011 WL 6258466, at \*4-5 (D. Md. Dec. 13, 2011) (finding that the petitioner did not meet the first prong of *Strickland* "[d]espite defense counsel's post-trial change of heart about her strategy"); *Crawley v. South Carolina Dep't of Corr.*, No. 9:08-1051-TLW-BM, 2009 WL 580440, at \*6 (D. S.C. Mar. 5, 2009) (finding counsel was not ineffective even though counsel supposedly admitted ineffective assistance for failing to request discovery); *Pacyon v. New York State Parole*, No. 90-CV-0796E(H), 1995 WL 264676, at \*1 (W.D. N.Y. Apr. 25, 1995) ("[A] criminal defendant's representation is not constitutionally ineffective just because trial counsel admits to inexperience and expresses doubts about his adequacy; there must be evidence (whether of acts or omissions) of the

18

counsel's incompetency. Pacyon's argument then contains an untenable premise –
namely, that facts that could not be the basis of a finding of constitutional
ineffectiveness of counsel (i.e., an attorney admitting to inexperience and
professional inadequacy) comprise facts that could be the basis for such."").
Accordingly, Movant has not met the first prong under *Strickland*, and the Court Is
not required to evaluate whether Movant suffered prejudice as a result of counsels'
decision. Nevertheless, the undersigned finds that Movant has not shown any such
prejudice.

### 2.   Movant Has Not Demonstrated Prejudice.

Even if Movant had established that counsel was deficient, she cannot show
that the outcome would have been different had counsel further investigated and
argued for those downward departures; nor can she demonstrate that a decision to
reject the plea would have been rational. First, the evidence against Movant was
overwhelming, as she was the only authorized signatory on the clinic's bank
accounts, the majority of money paid to Defendants by Aetna went into those
accounts, Movant transferred the money into other accounts owned by Defendants,
she made multiple withdrawals from those accounts which were structured just
under $10,000.00 so as not to trigger any reporting requirements, and she used those

funds to gamble at various casinos.[4]  (PSR ¶¶ 38-39, 48).  Counsel argued, and the evidence supported, that Movant engaged in the fraudulent scheme because she had a gambling addiction.

The Government made it clear in the plea agreement that it would not recommend acceptance of responsibility if, after entering the plea agreement, Movant were to "engage in conduct inconsistent with accepting responsibility" such as, for example, "falsely attempt[ing] to minimize [her] involvement in relevant offense conduct, [or] giv[ing] conflicting statements about [her] involvement[.]" (Doc. 96-1 ("Plea Agreement") ¶14; PSR ¶72).  Surely the Government could have viewed an argument by Movant that she committed the offenses because she was in fear of her husband as constituting conduct inconsistent with accepting responsibility.  Had Movant asked for either of those downward departures, she not only risked losing the acceptance of responsibility deductions, but the Government also may not have advocated for a sentence at the low end of the guideline range.

Likewise, any such argument could have backfired with the Court.  Indeed, at the end of the sentencing hearing and after having reviewed the Government's evidence, Judge Evans concluded that Movant "was more the driving force of the criminal conduct" than was her husband based on her addiction.  (Sent. Tr. at 37).

---

[4]     For example, between June 12, 2015, and June 17, 2015, Movant made twelve separate withdrawals for $9,991.00 while she was at the Borgata Hotel.  (PSR ¶48).

Had Movant argued that she committed the offenses because of her husband's abuse – which would have been belied by the aforementioned evidence – Movant could have lost credibility with the Court and received a higher sentence. Consequently, Movant has not demonstrated a reasonable probability that the outcome would have been different but for counsels' failure to seek downward departures under the guidelines because her husband abused her. *See, e.g., United States v. Cooper*, 514 F. App'x 16, 17 (2d Cir. 2013) (affirming district court's choice not to depart under §5K2.12 because the court found defendant committed her crime "not because of duress or coercion" by her husband but "because she is an addict and driven by her addiction"); *Brown v. United States*, Nos. 3:17-cv-616-RJC, 3:17-cr-40-RJC-DSC-1, 2018 WL 4108001, at *6 (W.D. N.C. Aug. 29, 2018) (finding no prejudice when attorney chose not to argue a downward departure under §5H1.3 based on her husband's physical and mental abuse because any such abuse was not present to the unusual extent that it distinguished her case from other offenders).

Finally, as part of the negotiated plea the Government dismissed thirty-two counts against Movant, all of which would have significantly increased her sentencing exposure. Had Movant gone to trial and been convicted on all counts, any sentence she would have received would have required, at the very least, an additional thirty-two consecutive years for the sixteen charges of aggravated identity

21

theft.[5]   Under these circumstances, the Court cannot find that a rational person in Movant's situation would have rejected the plea.  *See, e.g., United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding the movant could not demonstrate prejudice because a rational person would not have rejected a plea bargain where movant received the "exceptional benefit" of lowering his sentence of imprisonment by eight years).

## IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Stacy Spagnardi's motion to vacate her sentence [Doc. 139] be **DENIED WITH PREJUDICE**.

## V.   Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out

---

[5]    The mandatory minimum for each aggravated identity theft charge is two years to be served consecutively to any term of imprisonment.  *See* 18 U.S.C. §1028A.

frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant has not demonstrated that she received ineffective assistance of counsel. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED** this 16th day of March, 2022.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

24